110 So.2d 738

Nicholas S. THOMAS

v.

SOUTHDOWN SUGARS, INC., and the
Heirs of Jean M. Fulton.

No. 43661.

March 23, 1959.

Rehearing Denied April 27, 1959.

tain stock certificate originally issued by Realty Operators, Inc., and ordering the defendant, Southdown Sugars, Inc., to issue a new certificate to plaintiff and, accordingly, to pay all accrued dividends to him.

Plaintiff, Nicholas S. Thomas, claiming to be the holder in due course of stock certificate No. 2211 for 734 shares of a par value of $25, issued on May 6, 1930, to Mrs. Jean Fulton by Southdown Sugars, Inc., while operating under its former corporate name, Realty Operators, Inc., and allegedly purchased by Thomas for the sum of $1 on December 22, 1933, at an auction sale through Adrian H. Muller & Son, Jersey City, New Jersey, instituted this suit to compel the corporation to issue him a new certificate representing 1,468 shares of Southdown Sugars, Inc.; [3] and upon plaintiff's allegation that because Mrs. Jean Fulton, the record owner of said certificate, was deceased, "these proceedings should be conducted contradictorily with the heirs of said Jean M. Fulton, whose whereabouts are unknown and who are not represented in this state," the

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Michael J. Molony, Jr., New Orleans, for defendant and relator.

Duke, Porterie & Davison, New Orleans, for intervenor.

Phelps, Dunbar, Marks, Claverie & Sims, J. Barnwell Phelps, New Orleans, for plaintiff-respondent.

FOURNET, Chief Justice.

We granted certiorari in this case [1] to review the judgment of the Court of Appeal affirming the judgment of the district court decreeing plaintiff, J. Barnwell Phelps, Administrator of the Succession of Nicholas S. Thomas,[2] to be the sole owner and holder in good faith of a cer-

---

1. An appeal previously taken from the judgment of the district court to this court was transferred to the Court of Appeal, the record failing to disclose the amount in controversy. Thomas v. Southdown Sugars, Inc., 231 La. 75, 90 So.2d 682.

2. The original plaintiff, Nicholas S. Thomas, died pending trial of the suit, and the administrator of his succession was substituted as plaintiff.

3. Subsequently to the change in name, the capital structure of Southdown Sugars, Inc., was changed and its Board of Directors was duly authorized to cancel the capital stock certificates issued by Realty Operators and issue in their place, in the ratio of two new shares to one old share, capital stock certificates bearing the new name of Southdown Sugars, Inc.

court appointed a curator ad hoc to represent said absent heirs.

Southdown Sugars, Inc., in its answer, although expressing a willingness to transfer the stock to the proper owner of the certificate, opposed Thomas' demand on the ground that the certificate was neither endorsed nor accompanied by a stock power of attorney as required by Section 12:524 [4] of the Louisiana Revised Statutes and that, according to its records, not Thomas, but one S. Gottlieb was the purchaser at the aforementioned auction sale.

It appears from the record that Mrs. Jean Fulton, when advised by her attorneys to sell certain stock in order to establish a tax loss, authorized them to transmit this certificate of Realty Operators, Inc., to Adrian H. Muller & Son for sale at public auction. A letter written by Adrian H. Muller & Son in response to inquiry made by the curator for the Fulton Heirs discloses that the certificate was sold on December 22, 1933, for $1 to one S. Gottlieb of New York City. This sale to Gottlieb is further confirmed by letter of Mrs.

Jean Fulton, who, having received a proxy for signature sent to her by Realty Operators, Inc., in 1942, returned the same unsigned, stating that she had sold the stock at public auction through Adrian H. Muller & Son and had been advised that the purchaser was one S. Gottlieb. In 1950, plaintiff, being in possession of the unindorsed certificate and alleging that he had lost or misplaced the stock power of attorney, originally attached to it, requested that defendant issue a new certificate in plaintiff's name and effect a transfer of ownership on its books. Upon defendant's refusal,[5] plaintiff instituted this proceeding.

Following trial and submission of the case, defendant filed a motion to reopen the case for further proceedings alleging that the record conclusively shows that Gottlieb was the purchaser at the auction sale, and, consequently, he was a necessary party to this litigation; and that inasmuch as Gottlieb had not been made a party thereto, defendant would not be protected against any claims which might be asserted by Gottlieb or his heirs. This motion was denied, after

---

4. "A. Title to a certificate and to the shares represented thereby can be transferred *only:*

"(1) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or

"(2) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented

thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person. * * *" (Emphasis supplied.)

5. There is no doubt that defendant, being under a duty to protect the rights of persons interested in the stock against unauthorized transfers, was justified in its refusal in view of the fact that plaintiff failed to show compliance with the provisions of La.R.S. 12:524.

having been held under advisement for approximately one year, and judgment was rendered for the plaintiff.

While this case was pending before us on defendant's application for writ of certiorari to review the judgment of the Court of Appeal affirming the judgment of the district court, the Heirs of Gottlieb filed an intervention,[6] alleging that they are the owners of the certificate and, therefore, indispensable parties to this suit.

In brief before this court, counsel for plaintiff contends that the Heirs of Gottlieb are without right to intervene in this proceeding and are not indispensable parties thereto, and whatever interest they may have can be asserted in a separate proceeding against the plaintiff and the defendant corporation.

The records of Adrian H. Muller & Son, according to the testimony of Henry Brooks, a member of that firm, do not indicate that a stock power of attorney was attached to the certificate at the time of the sale; and Thomas, although alleging in his petition that the stock power, originally attached, had been lost or misplaced, stated on written cross-interrogatories that he had no distinct recollection of the matter. The only evidence to support plaintiff's allegation that the stock power of attorney was originally attached was the testimony of Howard O. Colgan, Jr. (member of the law firm of Milbank, Tweed, Hope & Hadley, who—on Mrs. Fulton's request—had transmitted the stock certificate to Adrian H. Muller & Son), who stated that he had examined the records of the law firm and found that "our letter to Muller *indicates* that the Certificate was accompanied by stock power with the signature of Mrs. Fulton guaranteed;" however, Colgan did not attach the letter on which he bases his conclusion.

The evidence with respect to the alleged agency relationship is equally meager. Plaintiff alleged in his petition that he himself had purchased the certificate, no mention being made that Gottlieb was in any way involved in the transaction, and it was only in answer to written cross-interrogatories, propounded by defendant, taken before a notary public in New York City, that plaintiff, when specifically asked whether he had purchased the stock directly or through some other person, stated that the certificate was purchased by Samuel Gottlieb for his account and that Gottlieb had acted as his agent at the sale.

■ We express no opinion on whether the evidence sufficiently establishes that a stock power of attorney, duly executed by

---

6. Simultaneously, the Heirs of Gottlieb filed a petition in the lower court against Southdown Sugars, Inc., J. Barnwell Phelps, Administrator of the Succession of Nicholas S. Thomas, and the Heirs of Mrs. Jean Fulton, asking to be recognized as owners of the certificate in contest here.

Mrs. Fulton, was attached to the certificate at the time of the sale and delivery to Gottlieb or that Gottlieb did in fact act as plaintiff's agent in purchasing the certificate, as we think that under the facts of this case, as disclosed by the record, the issue of ownership of the certificate cannot be finally adjudicated without the Heirs of Samuel Gottlieb being made a party to this proceeding; De St. Romes v. Levee Steam Cotton Press Co., 20 La.Ann. 381; De St. Romes v. Levee Steam Cotton Press Co., 34 La.Ann. 419; see, also, Kendig v. Dean, 97 U.S. 423, 24 L.Ed. 1061; Young v. New Pedrara Onyx Co., 48 Cal.App. 1, 192 P. 55; H. M. Rowe Co. v. Rowe, 154 Md. 599, 141 A. 334; Griffin & Vose, Inc. v. Non-Metallic Minerals Corp., 225 N.C. 434, 35 S.E.2d 247; and this court may always ex proprio motu notice the lack of indispensable parties. Succession of Todd, 165 La. 453, 115 So. 653; De Hart v. Continental Land & Fur Co., 196 La. 701, 200 So. 9; Jamison v. Superior Oil Co., 220 La. 923, 57 So.2d 896; Horn v. Skelly Oil Company, 221 La. 626, 60 So.2d 65:

While the facts in the De St. Romes cases supra, are somewhat different, the reasoning of the court is equally cogent when the record reveals beyond doubt, as it does in this case, that the issue of ownership of this stock cannot be finally adjudicated without joining the party asserting an adverse interest in said stock. In the first De St. Romes case, plaintiff sued the defendant corporation to be recognized as the legal owner of certain stock. The defendant, while admitting that plaintiff was originally the owner, alleged that plaintiff's agent, who was duly authorized to sell the stock, had transferred it to one Cohen, and the original certificates had been surrendered and cancelled. The court held that plaintiff could not be recognized as owner of the stock unless Cohen, the alleged transferree, was made a party to the suit. The second case involves the same stock and was brought by the daughter of the former plaintiff to recover the dividends on said stock. The defendant corporation filed an exception of want of proper parties alleging that the stock "claimed by plaintiff stands in its books in the name of other parties to whom it had been transferred by the agent of the original holder, who is also the alleged author of plaintiff," and that these parties should be joined in the suit. The court, in refuting plaintiff's contention that these parties need not be joined, inasmuch as they could not be adversely affected by the decree, stated: "It is elementary that a judgment rendered under such pleadings could not bind these transferrees, if adverse to their rights, and it is equally clear that such a judgment, if adverse to plaintiff in this suit, would not conclude her from testing the title of these transferrees to this stock, in a different suit or proceeding. Such a judgment

would, therefore, be barren of any practical result on the vital issue presented in the case, and could find no sanction in law or authority."

For the reasons assigned, the judgments of the district court and the Court of Appeal are annulled and set aside; and it is now ordered, adjudged and decreed that plaintiff's suit be dismissed as of non-suit at his cost.

### On Application for Rehearing

PER CURIAM.

In an application for a rehearing, counsel for plaintiff have reiterated points heretofore urged by them and which have been fully considered and disposed of by our original opinion.

■ Alternatively, they complain that the case should have been remanded for the purpose of impleading the heirs of Gottleib, and not dismissed as of nonsuit. In support of this contention, counsel cite Horn v. Skelly Oil Co., 221 La. 626, 60 So. 2d 65, where, after citation of several recent authorities, it was concluded that, in cases where it is found that there is an ab-

sence of indispensable parties, it is proper to remand the matter for the impleading of such parties rather than dismiss the suit.

We do not think that the practice approved in the Horn case is applicable here. Defendant, Southdown Sugars, Inc., raised the question of nonjoinder of indispensable parties in the lower court but plaintiff has resisted all efforts to require him to cite the Gottleib heirs.

■ Furthermore, we are not inclined to grant a rehearing for the limited purpose of considering this alternative plea of plaintiff, it being apparent that the ends of justice will be more expeditiously served by the institution of another suit.

The application for a rehearing is refused.

HAMITER, J., did not participate.

HAWTHORNE, J., is of the opinion that a rehearing should be granted to consider whether under the facts of this case this court should remand the case to the lower court so the heirs of Gottleib could be made parties or whether a non-suit was proper. See Horn v. Skelly Oil Co., 221 La. 626, 60 So.2d 65.